# 14-1581

## 14-2113(XAP)

## In the United States Court of Appeals
### for the Second Circuit

———————————

Keepers Inc., DBA Keepers, FKA Sidepockets, Inc.,
*Plaintiff - Appellant-Cross-Appellee*,

v.

Sidepockets, Inc., DBA Keepers, After Dark LLC, DBA Romantix Adult
Emporium, *Plaintiffs - Cross-Appellees*,

v.

City of Milford,
*Defendant - Appellee-Cross-Appellant.*

**Appeal from the United States District Court, District of Connecticut
Case No. 3:07-cv-1231, The Honorable Alvin W. Thompson, Judge**

———————————

**DEFENDANT – APPELLEE-CROSS-APPELLANT CITY OF MILFORD'S
PRINCIPAL AND RESPONSE BRIEF**

———————————

James N. Tallberg
Karsten & Tallberg LLC
8 Lowell Rd.
West Hartford, CT 06119
Tel: (860) 233-5660

Scott D. Bergthold
Law Office of Scott D. Bergthold, P.L.L.C.
7446 Shallowford Rd, Suite 202
Chattanooga, TN 37421
Tel: (423) 899-3025

*Attorneys for Defendant - Appellee-Cross-Appellant City of Milford*

# Table of Contents

Page

Table of Authorities..................................................................... iii

Jurisdictional Statement ...............................................................1

Statement of Issues Presented for Review ....................................1

Statement of the Case...................................................................1

Local Rule 28.1(b) Statement .......................................................1

Summary of Argument.................................................................13

Law and Argument......................................................................15

    I.    The district court correctly held that the Ordinance is not void for vagueness, and Keepers' appeal—limited to one evidentiary ruling—does not attempt to show otherwise ...........................................15

        A.    Standard of Review – Abuse of Discretion .......................................15

        B.    Because Keepers challenges only the admission of the Mello affidavit and memorandum, and any error on that point is harmless, Keepers is not entitled to reversal .......................................16

        C.    In any event, the district court did not abuse its discretion by declining to strike the Mello affidavit and memorandum..................20

            1.    *Keepers' failure to comply with the "particularity" requirement of Rule 30(b)(6), and its later identification of specific vagueness claims, justified the district court's consideration of the Mello submission* .......................................20

            2.    *Mello's memorandum does not contradict Lipton's deposition testimony, but even if it did, the district court was within its discretion to admit the memorandum because it comports with the Ordinance's plain language* .......................................24

i

II.   Requiring significant owners of an adult business to be listed on the license posted inside the business does not violate the First Amendment ................................................................29

A.   Standard of Review – *De Novo* ...........................................29

B.   The district court erred in assuming that *owning* an adult business is expressive, First Amendment-protected speech and striking the business license posting requirement for failure to satisfy First Amendment standards ........................................................29

C.   Even if owning an adult business were deemed speech entitled to First Amendment protection, Keepers' challenge to the license posting requirement fails because the requirement is not unconstitutionally overbroad ...............................................35

D.   The license posting requirement serves an important governmental interest ................................................................41

Conclusion ................................................................45

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements .........................................46

# Table of Authorities

## Federal Cases

*Acorn Investments, Inc. v. City of Seattle*,
887 F. 2d 219 (9th Cir. 1989) ...............................................................43

*AstenJohnson, Inc. v. Columbia Cas. Co.*,
562 F.3d 213 (3d Cir. 2009) ...............................................................24

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)...............................................................15, 36, 37

*Church of American Knights of the Ku Klux Klan v. Kerik*,
356 F.3d 197 (2d Cir. 2004) .........................................30, 31, 32, 34

*Citizens United v. Federal Election Comm'n*,
558 U.S. 310 (2010)...............................................................42

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)...............................................................31, 42

*City of Los Angeles v. Alameda Books, Inc.*,
535 U.S. 425 (2002)...............................................................42

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986)...............................................................42

*Cornelius v. NAACP Legal Defense and Education Fund, Inc.*,
473 U.S. 788 (1985)...............................................................30, 31

*Dumas v. City of Dallas*,
648 F. Supp. 1061 (N.D. Tex. 1986) ...............................................................43

*East Brooks Books, Inc. v. City of Memphis*,
48 F.3d 220 (6th Cir. 1995) ...............................................................43

*Envy, Ltd. v. City of Louisville*,
734 F. Supp. 785 (W.D. Ky. 1990)...............................................................40

*FCC v. Pacifica Fdn.*,
438 U.S. 726 ...............................................................36

*Fighting Finest, Inc. v. Bratton*,
　　95 F.3d 224 (2d Cir. 1996) ...............................................................30

*Gold Diggers, LLC v. Town of Berlin*,
　　469 F. Supp. 2d 43 (D. Conn. 2007)..............................................5, 6

*Grayned v. City of Rockford*,
　　408 U.S. 104 (1972)...............................................................10, 17, 19

*Howard v. Gonzalez*,
　　658 F.2d 352 (5th Cir. 1981) ...........................................................16

*John Doe No. 1 v. Reed*,
　　561 U.S. 186 (2010)......................................................................14, 38

*Kalis v. Colgate-Palmolive Co.*,
　　231 F.3d 1049 (7th Cir. 2000) ..........................................................20

*Keepers, Inc. v. City of Milford, Conn.*,
　　944 F. Supp. 2d 129 (D. Conn. 2013)................................................2

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
　　964 F.2d 106 (2d Cir. 1992) .............................................................15

*McCarthy v. S.E.C.*,
　　406 F.3d 179 (2d Cir. 2005) ......................................................13, 18

*Members of the City Council v. Taxpayers for Vincent*,
　　466 U.S. 789 (1984)......................................................................36, 38

*Padilla v. Maersk Line, Ltd.*,
　　721 F.3d 77 (2d Cir. 2013) ...............................................................29

*Palmer v. Hoffman*,
　　318 U.S. 109 (1943)...........................................................................16

*Peterson v. Islamic Republic of Iran*,
　　758 F.3d 185 (2d Cir. 2014) .............................................................29

*Pina v. Children's Place*,
　　740 F.3d 785 (1st Cir. 2014)..............................................................20

*ProtectMarriage.com-Yes on 8 v. Bowen*,
  752 F. 3d 827 (9th Cir. 2014) .......................................................38

*R & B Appliance Parts, Inc. v. Amana Co., L.P.*,
  258 F.3d 783 (8th Cir. 2001) .......................................................24

*Regensberger v. City of Waterbury*,
  No. 3:04-CV-1900, 2008 WL 3992650 (D. Conn. Aug. 25, 2008)...................37

*Reilly v. NatWest Markets Group Inc.*,
  181 F.3d 253 (2d Cir. 1999) ...................................................22, 23

*Richland Bookmart, Inc. v. Knox Cnty.*,
  529 F. Supp. 2d 868 (E.D. Tenn. 2007)................................42, 43, 44

*Richland Bookmart, Inc. v. Knox Cnty*,
  555 F.3d 512 (6th Cir. 2009) .......................................42, 43, 44

*Ricketts v. City of Hartford*,
  74 F.3d 1397 (2d Cir. 1996) .......................................................17

*Rubin v. Garvin*,
  544 F.3d 461 (2d Cir. 2008) .......................................................17

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
  547 U.S. 47 (2006).............................................................31, 32

*S.E.C. v. Bausch & Lomb Inc.*,
  565 F.2d 8 (2d Cir. 1997) .........................................................16

*SerVaas, Inc. v. Republic of Iraq*,
  540 Fed. Appx. 38 (2d Cir. 2013)..................................................15

*Shinseki v. Sanders*,
  556 U.S. 396 (2009).................................................................16

*Sullivan v. City of Augusta*,
  511 F.3d 16 (1st Cir. 2007).............................................24, 25, 27, 28

*Tee & Bee, Inc. v. City of West Allis*,
  936 F. Supp. 1479 (E.D. Wis. 1996) ...............................................43

*Texas v. Johnson*,
   491 U.S. 397 (1989)....................................................................31, 32

*United States v. O'Brien*,
   391 U.S. 367 (1968)..........................................................................32

*VIP of Berlin, LLC v. Town of Berlin*,
   593 F.3d 179 (2d Cir. 2010) .........................................17, 19, 27, 29

*Virginia v. American Booksellers Ass'n*,
   484 U.S. 383 (1988)..........................................................................36

*Virginia v. Hicks*,
   539 U.S. 113 (2003)....................................................................36, 37

*Ward v. Utah*,
   398 F.3d 1289 (10th Cir. 2005) .......................................................35

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008)..........................................................................35

*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005) ..............................................................15

**State Cases**

*Blue Movies, Inc. v. Louisville/Jefferson County Metro Government*,
   317 S.W. 3d 23 (Ky. 2010)...............................................................43

**Federal Statutes**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1343(3) ...............................................................................1

28 U.S.C. § 2111 ..................................................................................16

42 U.S.C. § 1983 ....................................................................................1

**Rules**

Fed. R. Civ. P. 30(b)(6)..................................................................*passim*

Fed. R. Civ. P. 61 ..................................................................................16

**Constitutional Provisions**

First Amendment...............................................................................*passim*

**Other Authorities**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
   *Federal Practice and Procedure* § 2103 (Supp. 2007) ......................24

## Jurisdictional Statement

Plaintiffs allege that City of Milford's sexually oriented business ordinance violates the First Amendment and other provisions of the U.S. Constitution. The district court had jurisdiction under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(3). The summary judgment below disposed of all issues, and this Court has jurisdiction under 28 U.S.C. § 1291.

On March 28, 2014, the district court denied the City's motion to alter or amend the judgment. The City's April 25, 2014 notice of appeal was timely.

## Statement of Issues Presented for Review

I.    Is Keepers entitled to a remand because the district court allowed an affidavit at summary judgment, even though Keepers does not argue that excluding the affidavit would change the outcome and cannot show that the district court abused its discretion?

II.   Does requiring principal owners of a sexually oriented business—who are not engaged in actual expression—to be listed on the business license posted within their own business violate the First Amendment?

## Statement of the Case

**Local Rule 28.1(b) Statement**

This case involves Keepers, Inc.'s constitutional challenge under 42 U.S. § 1983 to the City of Milford, Connecticut's 2003 and 2007 adult-oriented business ordinances. On March 30, 2013, Judge Alvin W. Thompson of the United States District Court for the District of Connecticut resolved the parties' cross-motions for

summary judgment in a 98-page opinion that upheld all but one aspect of the ordinances. *Keepers, Inc. v. City of Milford, Conn.*, 944 F. Supp. 2d 129, 175 (D. Conn. 2013).

**Introduction**

Chapter 2.3 of the Milford Code has regulated adult-oriented establishments since 1996. Chapter 2.3 was amended in August 2003 (the "2003 Ordinance") and repealed and replaced in May 2007, with an ordinance (the "2007 Ordinance" or the "Ordinance") having similar regulations. Under both ordinances, the police chief was the person charged with administering and enforcing the ordinance. (Apx. 31, 312, 313.)

On December 9, 2003, adult cabaret operator Sidepockets, Inc. (d/b/a Keepers) filed a complaint against the 2003 Ordinance. *Sidepockets, Inc. v. City of Milford*, No. 3:03-CV-02134 (AWT). The City agreed to not enforce the challenged regulations during the litigation. (R. 56-8 at 10-12.)[1]

**Keepers Challenges the 2007 Ordinance**

On August 13, 2007, with the *Sidepockets* lawsuit still pending, Appellant/Cross-Appellee Keepers, Inc. ("Keepers") (f/k/a Sidepockets, Inc.), joined by After Dark LLC (collectively, "Plaintiffs"), filed a complaint against the 2007 Ordinance. *Keepers, Inc. v. City of Milford*, No. 3:07-CV-1231 (AWT). (Apx.

---

[1] The abbreviation "R." refers to the record in the district court.

1-28.) This complaint asserted the same constitutional challenges that were asserted against the 2003 Ordinance. Compare *Sidepockets*, No. 3:03-CV-02134, R. 1, ¶38a to ¶ 38z with *Keepers*, No. 3:07-CV-1231, R. 1, ¶ 59a to ¶ 59z (Apx. 19-22). On October 16, 2008, the cases were consolidated.

Again, the City refrained from enforcing the challenged regulations during the litigation. (R. 72 at 16 n.12.) The City also issued Keepers an adult business license. (*See* R. 68-2 at 2.)

Plaintiffs asserted more than two dozen claims against the 2007 Ordinance. (Apx. 10-24.) But only one allegation—that the Ordinance "contains numerous and various terms, phrases, and provisions which are impermissibly vague, ambiguous, and/or overbroad," (Apx. 22 ¶ 59.s.), referred to vagueness. The complaint did not identify any specific provision alleged to be vague, and prior to moving for summary judgment, Plaintiffs never identified any such provision.

Plaintiffs also claim that the Ordinance "contains licensing restrictions and limitations upon the exercise of First Amendment protected activities…" (Apx. 22, ¶ 59.y.) Again, Plaintiffs did not specify their constitutional contention.

**Lipton's Rule 30(b)(6) Deposition**

In late 2008, Plaintiffs served a 9-page Rule 30(b)(6) deposition notice with 31 broad, far-ranging subjects of anticipated inquiry. (Apx. 158-166.) Only *one* topic even arguably dealt with the issue of vagueness: "[t]he definition and

interpretation of any provisions of Chapter 2.3 which are not specifically defined in that Ordinance." (Apx. 162, ¶12.) The notice did not specify the provisions, interpretation issues, or circumstances that Plaintiffs intended to raise.

The City designated Marilyn Lipton as the Rule 30(b)(6) deponent. As the former City Attorney for 22 years, she was more familiar with the Ordinance and its drafting history than the new City Attorney at the time. And because Chapter 2.3 (except for the basic licensing requirement) had not been enforced, Lipton was the person most knowledgeable about the Ordinance.

Because the notice identified more than two dozen topics, including several relating to the more than 2,000 pages in the Ordinance's legislative record, Lipton spent approximately 15 to 20 hours preparing for the deposition. (Apx. 224.) Yet her deposition focused extensively on how various provisions might be applied to conjured hypothetical circumstances, which often bordered on the absurd. (Apx. 173-289.)

Before the deposition, no one had ever identified any specific provision of the Ordinance that was allegedly vague. Moreover, the Ordinance was modeled after identical or virtually identical language that had been upheld by multiple courts, including this Court and district courts in this circuit, on multiple occasions. (Apx. 30, § 2.3-1(b)) (listing several judicial decisions upholding similar ordinance

language against vagueness challenges, *e.g.*, *Gold Diggers, LLC v. Town of Berlin*, 469 F. Supp. 2d 43, 61 (D. Conn. 2007)).

The City thus had no reason to believe, at the time of the deposition, that policies or interpretative documents for the Ordinance were needed since: (1) the only affected parties had already obtained licenses, and (2) the Ordinance contains a *scienter* clause requiring proof that violations were committed *knowingly*. (*See* Apx. 44-45, § 2.3-18.) Accordingly, the City repeatedly confirmed in the deposition that, at that time, the City had no policies or documents providing guidance on how the Ordinance would be interpreted or enforced (other than the plain language of the Ordinance itself). (Apx. 205, 209-213, 237, 240, 242, 247, 249, 253, 255, 256, 264, 267, 270, 271.)

At the start of the deposition, the City asserted an objection and noted that Lipton was "not authorized to contradict the ordinance text . . . [or] to state the city's definitive legal position as to any rationale or stated purpose especially not anything that would contradict the ordinance text." (Apx. 172.) During the deposition, Lipton answered "I don't know" or "I'm not sure" to some questions that, upon closer examination of the 17-page, single-spaced Ordinance, are answered by the Ordinance. (*See*, *e.g.*, Apx. 266) (stating "I'm not sure" when asked whether a single operator's station must have a direct line of sight to the

5

entire premises, even though § 2.3-13(a)(7) makes clear that multiple operator's stations can be used to monitor the premises).

Lipton acknowledged that there might be a time—if specific questions were presented—when the City might adopt policies or interpretations regarding various provisions of the Ordinance. (Apx. 239) (explaining that if Ordinance administrator asked for guidance, the city attorney "would assist … in providing that"); (Apx. 270-272) (same).

Indeed, the Ordinance itself specifically recognizes the City's "constitutional duty to interpret, construe, and amend its laws to comply with constitutional requirements as they are announced;" (Apx. 30, Chapter 2.3 Preamble), and explicitly states that as "with the passage of any ordinance, the City and the Board of Aldermen accept as binding the applicability of general principles of criminal and civil law and procedures and the rights and obligations under the United States and Connecticut Constitutions…" (*Id.*) So although no factual occurrences had necessitated any interpretation of the Ordinance, the Ordinance recognizes that specific facts arising during enforcement of the Ordinance may necessitate an interpretation, which would be constrained by both the Ordinance and constitutional principles.

Later in January 2009, two weeks after the 30(b)(6) deposition, Plaintiffs took the deposition of Milford Chief of Police Keith L. Mello. (Apx. ix, district

court docket sheet reflecting filing of "Exhibit A, Mello Dep. Excerpt" (R. 55-3) in support of City's motion for summary judgment).)

**Keepers' Summary Judgment Motion**

In August 2009, Plaintiffs moved for summary judgment. (R. 49.) For the first time, they identified portions of the Ordinance alleged to be vague, and cited Lipton's testimony as support. (R. 51 at 10-22.)

Plaintiffs' brief also challenged, for the first time, § 2.3-5(c)'s requirement that an establishment's adult business license, which bears the name of every person with an "influential interest" in the business, be posted at the entrance of the business. (R. 51 at 62-66.)

**Mello's Memorandum and Keepers' Motion to Strike**

In November 2009, the City responded to Plaintiffs' summary judgment motion. (R. 68-1.) The response included a November 23, 2009 affidavit and memorandum prepared by Milford Chief of Police Keith L. Mello. (Apx. 311-319.) As police chief, Mello served as the Ordinance Administrator. (Apx. 312, ¶ 3.) His memorandum addressed issues and questions raised by Plaintiffs' summary judgment motion by identifying and applying the sections of the Ordinance that govern the issues. (Apx. 313-319.)

The next month, Plaintiffs moved to strike Mello's affidavit and memorandum and related portions of the City's summary judgment response, and

7

also sought sanctions. (R. 71.) In September 2010, after reviewing the 50 pages of

briefing the parties had submitted on the matter, the district court denied Plaintiffs'

motion to strike. (Apx. 46-47.) The court explained that:

> The complaint does not specify which particular provisions of the
> Ordinance are alleged to be vague. The defendant did not pin down
> the plaintiffs during discovery prior to the Rule 30(b)(6) deposition of
> Marilyn Lipton as to which provisions of the Ordinance the plaintiffs
> contend are vague. The plaintiffs' extensive Rule 30(b)(6) deposition
> notice did not designate any specific interpretation issues in advance,
> and Lipton was presented with various hypothetical scenarios during
> the deposition although no such hypotheticals were identified in the
> deposition notice. A party issuing a Rule 30(b)(6) deposition notice
> "must describe with reasonable particularity the matters for
> examination."
>
> The court concludes that the defendant knew for the first time the
> specific provisions of the Ordinance that were being challenged as
> void for vagueness only after the plaintiffs filed their motion for
> summary judgment. The defendant responded with the police chief's
> interpretive memorandum and affidavit. Now there are specific
> contentions as to the Ordinance being vague, and those specific
> contentions have been responded to.

(Apx. 46-47.)

The Court determined that it would consider the submission, and also held

that "the plaintiff's request for sanctions is particularly lacking in merit." (Apx. 47.)

The district court denied reconsideration. (Apx. 50-51.)

**The District Court's Summary Judgment Decision**

In March 2013, the district court issued a 98-page decision the City

summary judgment on all but one of Plaintiffs' many claims. (Apx. 52-149.)

Addressing Plaintiffs' vagueness claims, the district court first set forth the governing law from the Supreme Court and this Court. (Apx. 85-87) (citing, *inter alia*, *Grayned v. City of Rockford*, 408 U.S. 104 (1972), and *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179 (2d Cir. 2010)). The district court then dismissed the Plaintiffs' as-applied vagueness claim for lack of standing. (Apx. 87-89.)

Next, the court analyzed Plaintiffs' facial vagueness claims as to the Ordinances, and found them to be without merit. (Apx. 89-109.)

Rejecting Keepers' argument about alleged conflict in certain provisions of the 2003 Ordinance, the district court held that "Keepers has misread the ordinance" and that "no such conflict exists." (Apx. 95.) Regarding other terms therein, such as "regularly features," the court applied *VIP of Berlin* and held that the terms were not impermissibly vague. (Apx. 97-98.) Nor were its licensing provisions void for vagueness. (Apx. 99-100.) The court held that any alleged vagueness in the 2003 Ordinance "is unlikely to chill constitutionally protected conduct as it gives sufficient notice as to what is prohibited. Therefore, the 2003 ordinance is not unconstitutionally vague, and the foregoing analysis applies to the comparable sections of the 2007 ordinance as to which the plaintiffs advance the same arguments." (Apx. 100-01.)

Turning to the 2007 Ordinance, the district court observed that Plaintiffs relied heavily on the *reversed* trial court decision in *VIP of Berlin* for their witness-

9

testimony-proves-facial-vagueness argument. (Apx. 103.) Following this Court's later decision in that case, however, the district court emphasized the fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (Apx. 103) (quoting *VIP of Berlin, LLC*, 593 F.3d at 187). And while courts should consider "'perhaps to some degree … the interpretation of the statute given by those charged with enforcing it,'" (Apx. 104) (quoting *Grayned*, 408 U.S. at 110), the governing consideration is the "ordinance's stated purpose and plain meaning." (Apx. 104.)

Applying these rules, the district court found the Ordinance "is clear on its face, as <u>Grayned</u> requires. The court also finds that 'the interpretation of the statute given those charged with enforcing it,' 408 U.S. at 110, is consistent with the plain meaning of the ordinance itself." (Apx. 104.)

Rejecting Plaintiffs' argument concerning the substance and timing of the Mello affidavit and memorandum, the district court held:

> Rather than interpreting the ordinance's terms and procedures, Mello identifies the sections of the ordinance which clearly govern these issues; little to no policy or textual interpretation is provided. Insofar as the Mello Affidavit and Memorandum interprets the ordinance in order to respond to the plaintiffs' questions, these interpretations are (a) based on a 'plain meaning' understanding of the terms of the ordinance, or (b) consistent with the ordinance's stated purpose.
>
> It would be unfair to ignore this document in favor of a deposition in which the plaintiffs succeeded in surprising a deponent not charged

10

with enforcement of the ordinance with hypotheticals that served to "stump" her. While "there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question," American Communications Assn. v. Douds, 339 U.S. 382, 412 (1950), "speculation about possible vagueness in hypothetical situations not before the [c]ourt will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." Hill v. Colorado, 530 U.S. 703, 733 (2000) (citing United States v. Raines, 362 U.S. 17, 23 (1960)).

(Apx. 105-06.)

The district court also recognized the 2007 Ordinance's scienter requirement—the City must prove that a violation of the Ordinance was committed *knowingly*. (Apx. 106-08.) Thus, while "the 2007 Ordinance is not unconstitutionally vague on its face," nor does it "authorize or encourage arbitrary or discriminatory enforcement," (Apx. 108), "insofar as there could be a danger of notice to potential violators, it is mitigated by a scienter requirement." (*Id*.)

The district court therefore granted the City's motion for summary judgment as to the Plaintiffs' vagueness claims. (Apx. 109.)

The court below, however, granted the Plaintiffs' summary judgment motion on one issue. Applying "a right to anonymous speech grounded in the First Amendment," (Apx. 138), the district court struck, on overbreadth grounds, the 2007 Ordinance's requirement that the business license—because it lists the names of significant owners (those with 30% or more ownership) of the adult business—be posted inside the business. (Apx. 137-140; 142-144.)

11

In striking that requirement on its face, the district court never identified the speech or expression that adult business owners, by virtue of their ownership, are engaged in, or how any actual expression would be chilled by posting the business license inside the adult business. (*Id.*) And although the district court recognized that "the City has a substantial interest in enforcing its ordinance," and in "identify[ing] the name of the people who control and operate the business," (Apx. 141), the district court held that "the posting provision is unconstitutionally broad" by virtue of requiring significant owners to be listed on the posted license. (Apx. 143.)

Indeed, the district court conceded that "many, if not most, significant shareholders or other owners of an entity" will qualify as people with the actual power to control the adult business, but nevertheless denied the City's motion to alter or amend the judgment on this issue. (Apx. 151.)

The City and Keepers (not joined by co-plaintiff After Dark LLC) filed timely appeals of the district court's summary judgment.

## Summary of Argument

Keepers' appeal is remarkable in what it does *not* argue. It does not contend that the district court's vagueness rulings—that the plaintiffs below lacked standing to mount an as-applied claim, (Apx. 87-89), and that their facial vagueness claims fail as a matter of law, (Apx. 89-109)—are wrong.

Instead, Keepers argues only one evidentiary point. Keepers contends that the district court's decision to admit Mello's affidavit and memorandum "constituted an abuse of discretion," and that "[t]he case should be remanded for consideration of whether the ordinance is void for vagueness based solely on the former city attorney's Rule 30(b)(6) deposition testimony." (Aplt. Prin. Brf. 4.) At bottom, Keepers requests only that this decade-old litigation continue.

But Keepers' argument is a bridge to nowhere because Keepers does not contend that excluding the Mello submission would change the outcome of its facial vagueness claim.[2] It would not. The district court rejected the facial vagueness claim on two independent grounds, *neither of which Keepers challenges on appeal*. First, the district court found that "the ordinance here is clear on its face, as Grayned requires." (Apx. 104.) Thus, Keepers' facial vagueness claim fails as a matter of law, regardless of whether the Mello memorandum is considered. Second,

---

[2] Keepers' opening brief does not attack the district court's ruling that it lacked standing to bring as-applied vagueness claims, so any such argument is waived. *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005).

13

the district court "also" found that the Mello memorandum "is consistent with the plain meaning of the ordinance itself." (Apx. 104.) Each of these grounds show that the Mello memorandum is superfluous, and its exclusion would not alter the outcome. Any error in admitting Mello's submission is harmless, and does not warrant reversal.

In any event, there is no reversible error because the district court did not abuse its discretion in admitting the Mello affidavit. As the district court found, the City learned which terms and provisions Plaintiffs alleged to be vague only when Plaintiffs moved for summary judgment. Mello's subsequent memorandum—based on the plain language of the Ordinance—was thus appropriate to consider. The trial court's rejection of Keepers' facial vagueness claim should be affirmed.

The district court's ruling on the required posting of a business license, however, should be reversed. It wrongly assumes a necessary conclusion—that significant owners of adult businesses, by virtue of their ownership, are engaged in constitutionally protected expression. They are not. The district court simply assumed that "a right to anonymous speech grounded in the First Amendment" was implicated, (Apx. 138-39) (citing political speech cases), and struck down the provision as overbroad on its face under the "exacting scrutiny" standard reserved for laws that burden "core political speech." *John Doe No. 1 v. Reed*, 561 U.S. 186, 193 (2010). The ruling below should be reversed on this ground alone.

14

And even if adult business owners, *qua* their ownership, could be deemed to be engaged in protected expression, their appearance on a business license posted in the business does not warrant facial invalidation on overbreadth grounds. For such a claim to succeed, "[t]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. 601, 615 (1973). But here, the district court conceded that "many, if not most," significant owners we be people with the power to control the business, (Apx. 151), *i.e.*, people whom the City has a substantial interest in identifying. Thus, even applying the inapposite "anonymous speech" cases cited by the district court, the licensing posting requirement for significant owners is valid.

### Law and Argument

**I.  The district court correctly held that the Ordinance is not void for vagueness, and Keepers' appeal—limited to one evidentiary ruling— does not attempt to show otherwise.**

**A.  Standard of Review – Abuse of Discretion**

A district court's discovery rulings are reviewed for an abuse of discretion. *Wood v. FBI*, 432 F.3d 78, 82 (2d Cir. 2005). Rulings on motions to strike affidavits and other evidence from summary judgment pleadings are also reviewed for an abuse of discretion. *SerVaas, Inc. v. Republic of Iraq*, 540 Fed. Appx. 38, 41 (2d Cir. 2013). Under this standard, a district court has wide latitude, and this Court will ordinarily defer to the district court's exercise of discretion. *Maresco v. Evans*

*Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992). Reversal is

warranted only where no reasonable basis for the district court's decision. *S.E.C. v.*

*Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1997).

**B.     Because Keepers challenges only the admission of the Mello affidavit and memorandum, and any error on that point is harmless, Keepers is not entitled to reversal.**

The district court's admission of Mello's affidavit and memorandum—even

if erroneous—is harmless and provides no ground for reversal.

"On the hearing of any appeal or writ of certiorari in any case, the court shall

give judgment after an examination of the record without regard to errors or

defects which *do not affect the substantial rights of the parties*." 28 U.S.C. § 2111

(emphasis added). *Cf.* Fed. R. Civ. P. 61 ("Unless justice requires, no error in

admitting or excluding evidence … is ground for … disturbing a judgment or order.

At every stage of the proceeding, the [district] court must disregard all errors and

defects that do not affect any party's substantial rights."). The harmless-error

statute "seeks to prevent appellate courts from becoming impregnable citadels of

technicality." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (internal citation and

quotation marks omitted).

The party "who seeks to have a judgment set aside because of an erroneous

ruling carries the burden of showing that prejudice resulted." *Palmer v. Hoffman*,

318 U.S. 109, 116 (1943); *see also Howard v. Gonzalez*, 658 F.2d 352, 357 (5th Cir.

16

1981) ("A party asserting error has the burden of proving that 'substantial rights' were affected by an erroneous evidentiary ruling."). Determining whether an error has affected a "substantial right" of the party "involves an assessment of the likelihood that the error affected the outcome of the case." *Ricketts v. City of Hartford*, 74 F.3d 1397, 1412 (2d Cir. 1996) (internal quotations omitted). Where it is unlikely that a different evidentiary ruling "would have affected the outcome," any error is harmless. *Id.* at 1412.

In evaluating a vagueness claim, courts follow the "fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010). The relevant inquiry is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). Courts look first to the "the words of the ordinance itself," its stated purpose, "and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford*, 408 U.S. 104, 110-11 (1972). But the governing consideration is the "ordinance's plain meaning and stated purpose." *VIP of Berlin, LLC*, 593 F.3d at 189, 191.

17

Keepers' limited appeal concerns an evidentiary ruling related to the district court's rejection of Keepers' facial vagueness claim. On that claim, the court below ruled against Keepers on two grounds:

> The court finds that the ordinance here is clear on its face, as Grayned requires. The court also finds that "the interpretation of the statute given by those charged with enforcing it," [Grayned,] 408 U.S. at 110, is consistent with the plain meaning of the ordinance itself.

(Apx. 104.)

Keepers does not challenge either of those grounds on appeal—it neither argues that the Ordinance language is unconstitutionally vague on its face, nor the Mello memorandum is inconsistent with the plain meaning of the Ordinance. Nor can Keepers advance such arguments for the first time in its reply brief. *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005).[3]

Keepers argues only that Mello's memorandum is inconsistent with, or supplemental to, Lipton's deposition testimony. But *that* argument is irrelevant to the ultimate issue: whether the Ordinance is unconstitutionally vague. Therefore, the error of which Keepers complains—admission of the Mello memorandum to supposedly cure alleged deficiencies in Lipton's testimony—is harmless because, even if accepted, it would not change the substantive ruling below.

---

[3] Out of an abundance of caution, the City cites the substantive rules for vagueness claims to show that the district court's consideration of Mello's submission was, at best, harmless error. These citations, however, do not open the door for Keepers to press a vagueness argument in their reply brief. That opportunity has been waived.

Harmless error analysis applies with extra force here, because the admission of the Mello affidavit goes only to the district court's second of two, independent grounds for rejecting Keepers' vagueness claim. Even if Keepers had argued that Mello's memorandum, as an "interpretation of the statute given by those charged with enforcing it," *Grayned*, 408 U.S. at 110, is contrary to the plain meaning of the ordinance itself, the memorandum would not trump "the words of the ordinance itself." *Id.*; *cf. VIP of Berlin, LLC*, 593 F.3d at 179, 187 (rejecting claim that ordinance was vague as applied to plaintiff's adult bookstore, despite city manager's inability to give precise answers concerning scope of adult business ordinance). Because the district court's first conclusion—that "the ordinance is clear on its face," (Apx. 104)—is sufficient to fell Keepers' facial vagueness claim, any error in considering the Mello memorandum to reach the second conclusion is harmless.

Keepers' argument that Mello's submission should have been excluded would not change the outcome of Keepers' vagueness claim. Therefore, this Court should affirm the judgment below as to that claim, and need not address Keepers' irrelevant evidentiary argument.

**C.     In any event, the district court did not abuse its discretion by declining to strike the Mello affidavit and memorandum.**

**1.     *Keepers' failure to comply with the "particularity" requirement of Rule 30(b)(6), and its later identification of specific vagueness claims, justified the district court's consideration of the Mello submission.***

Because Keepers' Rule 30(b)(6) notice did not identify with "reasonable particularity" the Ordinance provisions alleged to be vague—those were later identified in Keepers' summary judgment motion—the district court did not abuse its discretion in considering Mello's memorandum addressing those provisions.

Rule 30(b)(6) "contains two basic steps: first, the opposing party must serve a deposition notice on the government entity that 'describe[s] with *reasonable particularity* the matters for examination,' and second, the agency must then designate officers or agents authorized to testify on its behalf on the listed subjects." (Aplt. Prin. Brf. 5) (quoting Fed. R. Civ. P. 30(b)(6)) (emphasis added). A party issuing a 30(b)(6) notice has a duty "to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (internal citation and quotation marks omitted). A "generic Rule 30(b)(6) notice . . . does not meet this standard." *Id.* If the notice does not identify areas of inquiry with reasonable particularity, the examining party cannot later complain of the deponent's lack of knowledge. *Pina v. Children's Place*, 740 F.3d 785, 792 n.6 (1st Cir. 2014) (barring request to strike unprepared

30(b)(6) witness's testimony because "neither area of inquiry was identified with reasonable particularity in the 30(b)(6) notice").

As an initial matter, Keepers' deposition notice failed to comply with Rule 30(b)(6)'s "reasonable particularity" requirement. Keepers asserts that its "complaint and its Rule 30(b)(6) deposition notice detailed specific concerns with respect to the meaning and application of the ordinance," but this assertion is false. (Aplt. Prin. Brf. 12.) Keepers provides three citations, but none identify specific terms or provisions alleged to be vague.

First, Keepers cites its complaint (at Apx. 22), but that document merely claims that the Ordinance "contains numerous and various terms, phrases, and provisions which are impermissibly vague, ambiguous, and/or overbroad . . ." (Apx. 22.) Keepers' second citation, to page 5 of its nine-page 30(b)(6) notice (at Apx. 162), is likewise unhelpful. The only potential mention of vagueness there (among 31 far-ranging areas of inquiry) is a reference to "[t]he definition and interpretation of any provisions of Chapter 2.3 which are not specifically defined in that Ordinance." (Apx. 162, ¶12.) Finally, Keepers' third citation—to the last page of its 30(b)(6) notice (Apx. 166)—references "[a]ny and all documents prepared for the enforcement or interpretation of Chapter 2.3." This is obviously not a "detailed" or "specific" concern about alleged vagueness in the meaning of a term or provision in the Ordinance.

21

Accordingly, Keepers' claim that "the City was specifically on notice" concerning "key terms in the ordinance," (Aplt. Prin. Brf. 7), is plainly wrong.

Likewise, Keepers' repeated contention that Mello's November 23, 2009 memorandum contradicts Lipton's January 8, 2009 testimony that there were no interpretive documents, (*see*, *e.g.*, Aplt. Prin. Brf. 9, ¶¶ 9, 12), is without merit. Lipton's testimony was entirely accurate because the Mello memorandum and affidavit did not exist at the time of Lipton's 30(b)(6) deposition. Rather, Mello issued his memorandum only after the Plaintiffs, for the first time, asserted specific vagueness arguments in their summary judgment motion. (Apx. 46-47) (holding that "[t]he defendant knew for the first time the specific provisions of the Ordinance that were being challenged as void for vagueness only after the plaintiffs filed their motion for summary judgment" and declining to strike Mello memorandum and affidavit).

Keepers asks this Court to apply *Reilly v. NatWest Markets Group Inc*., 181 F.3d 253 (2d Cir. 1999), and invalidate the district court's decision to consider Mello's memorandum. But the present case is easily distinguishable.

*Reilly* concerned an employment dispute between Reilly and his former employer, NatWest. *Id*. at 258-59. Reilly served a Rule 30(b)(6) notice that "describe[d] with reasonable particularity the matters for examination." *Id*. at 259 ("request[ing] that NatWest produce for deposition those of its representatives who

were familiar with the extent and value of the work that [Reilly] had performed."). In an apparent effort to thwart Reilly's ability to make his case, NatWest furnished a single witness who lacked sufficient knowledge in a number of key areas identified in the notice. *Id.*

Several months later—on the eve of trial—NatWest tried to cure its 30(b)(6) witness's lack of knowledge by submitting "a witness list naming five witnesses who had not been produced in response to Reilly's Rule 30(b)(6) notice." *Id*. Because the circumstances indicated foul play, the trial court barred the new witnesses from testifying on topics addressed in the Rule 30(b)(6) notice. *Id.* On appeal, this Court *affirmed* because it was clear that NatWest had violated Rule 30(b)(6).

*Reilly* does not help Keepers. Here, the City's witness devoted 15-20 hours to prepare for a deposition covering 31 areas of inquiry—none of which specified particular Ordinance terms or provisions alleged to be vague. Further, the district court found that equity *favors* consideration of the Mello memorandum: "It would be unfair to ignore this document in favor of a deposition in which the plaintiffs succeeded in surprising a deponent not charged with enforcement of the ordinance with hypotheticals that served to 'stump' her." (Apx. 47.)

Keepers' failure to "describe with reasonable particularity the matters for examination," its surprise hypotheticals at Lipton's deposition, and its later

23

summary judgment motion (finally) asserting specific vagueness arguments warranted the district court's consideration of the Mello memorandum.

**2.** ***Mello's memorandum does not contradict Lipton's deposition testimony, but even if it did, the district court was within its discretion to admit the memorandum because it comports with the Ordinance's plain language.***

The district court was further justified in considering Mello's memorandum not only because it is consistent with Lipton's deposition testimony, but also because it is "based on a 'plain meaning' understanding of the terms of the ordinance," and "consistent with the ordinance's stated purpose." (Apx. 105-06.)

A Rule 30(b)(6) witness's *legal* conclusion is not binding on the party that designates her. *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229, n.9 (3d Cir. 2009) (holding witness's interpretation of contract was not binding on designating party); *see also R & B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 787 (8th Cir. 2001). "[T]he testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2103 (Supp. 2007). The mere fact that a government's witness cannot adequately apply an ordinance to a surprise hypothetical during a deposition does not preclude the government from rendering a clarifying document later. *Sullivan v. City of Augusta*, 511 F.3d 16, 30 (1st Cir. 2007). So long as it is consistent with the express

24

language of the ordinance, the later document is admissible as an "authoritative representation of the City's interpretation," regardless of earlier testimony. *Id.*

Keepers' argument is that Mello's memorandum "contradicted, supplemented, and altered Lipton's sworn testimony"—an irrelevant argument that does not prove a vagueness claim—and it proffers 21 "mini-arguments" in support. (Aplt. Prin. Brf. 8-11.) It is unnecessary to respond to all 21 of these arguments. Nevertheless, review of a few of them confirms both the district court's characterization of Mello's memorandum and the validity of the Ordinance. It also shows that many of Keepers' questions were incomplete and incapable of a definitive answer, so Lipton's non-committal responses were appropriate.

Keepers first alleges that Mello contradicts testimony that a person appearing semi-nude one time in a day would constitute "consistently and repeatedly" under the Ordinance's definition of "regularly." (*Id.* at 8, ¶ 1 (citing to (Apx. 197-98).) There are two ways to interpret Lipton's answer. One is to argue, as Keepers does, that the City's "binding position" is that if an adult cabaret employee appears semi-nude merely once, on *only one particular day*, this constitutes "regularly" (*i.e.*, "consistently and repeatedly"). Of course, this is an unreasonable interpretation that cannot be squared with the plain language of the Ordinance. The other interpretation is to correctly observe that an employee may appear semi-nude on a regular basis (*e.g.*, *daily*), even if the employee does so only

25

one time *each day*, *i.e.*, once "in a day." This latter interpretation—the only logical interpretation per the language of the Ordinance—is set forth in Mello's memorandum. (Apx. 313.)

Keepers' second "mini-argument," (Aplt. Prin. Brf. 8, ¶ 2), fares no better, as Lipton's "I don't know" was the proper response to Keepers' question about whether "public indecency or indecent exposure would . . . include something like urinating in public." (Apx. 221.) As Mello's memorandum points out, (*see id*. at 314), public indecency requires "intent to arouse or satisfy the sexual desire of the person," Conn. Gen. Stats. § 53a-186, and the question does not supply the facts for making that determination.

Keepers' third example also fails to create vagueness where there is none. (Aplt. Prin. Brf. 8, ¶ 3.) Lipton was not sure whether the criminal disability provision set forth in § 2.3-2 of the Ordinance, relating to the "sale or distribution of controlled substances or illegal drugs or narcotics," would apply to any type of drug crime. (Apx. 221-22.) But as Mello's memorandum rightly concludes, the answer is "[n]o. For example, possession crimes do not constitute 'sale or distribution' crimes." (Apx. 314.)

While space does not permit debunking each of Keepers' alleged Lipton-Mello "contradictions," the City need not do so. Even if the Mello memorandum contradicted Lipton's testimony, his later-supplied interpretative document is

consistent with the Ordinance's plain meaning and stated purpose, (*see* Apx. 105-06) and is therefore admissible. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 192 (2d Cir. 2010) (considering city manager's testimony that was "consistent with the stated purpose and plain meaning of the ordinance" even though plaintiff alleged that her testimony demonstrated the ordinance's vagueness); *see also Sullivan*, 511 F.3d at 21-22 (reversing district court's exclusion of affidavit allegedly contradicting affiant's prior deposition testimony).

*Sullivan* is instructive as to Keepers' claim that Mello's later memorandum should have been stricken as inconsistent with Lipton's prior testimony. *Sullivan* involved a First Amendment challenge to a parade ordinance and a separate mass outdoor gathering ordinance. *Id.* at 21-22. The Deputy Police Chief was asked at deposition "whether a parade of 3,000 people for a mile down the street was a mass gathering" for purposes of the mass outdoor gathering ordinance. *Id*. at 26. He responded: "That's—I mean, that's an interpretation. I don't know. I would have to review what the ordinance said," *id*., and continued, "[t]hey are moving and that type of thing. They could be considered a parade." *Id.* Later, *the same witness* produced an affidavit stating that "the City interprets the Mass Outdoor Gathering permit to only apply to a gathering which occurs at a fixed location." *Id.* at 26. The district court disallowed the affidavit.

The First Circuit reversed. The court noted that the "deposition response came in answer to a question that could easily have caught [the witness] by surprise, about whether an enormous hypothetical 3,000 person parade extending for a mile would be a mass-gathering." *Id.* at 29. The court also recognized that before signing the subsequent affidavit, the witness had "opportunity to review the issue, to reread the ordinances, and to consult with" appropriate persons. *Id.* Because it was consistent with the language of the ordinance, the First Circuit allowed the subsequent, contradictory affidavit. *Id.* at 30.

Like the deponent in *Sullivan*, Lipton was asked to apply the Ordinance to a number of hypotheticals. Moreover, like the deponent in *Sullivan*, Lipton was unsure, on the spot, how the Ordinance would apply to some of these potential situations, even though the plain language of the (17-page, single-spaced) Ordinance supplies the answers.

After Lipton testified, and once Plaintiffs filed their summary judgment brief identifying specific Ordinance provisions as allegedly vague, the Police Chief (the administrator of the Ordinance, Apx. 31), issued his memorandum based on the plain language of the Ordinance. Mello's memorandum appropriately served to supplement and clarify Lipton's answers to Plaintiffs' "gotcha" hypotheticals.

Here, as with the testimony in *VIP of Berlin* and the later affidavit in *Sullivan*, it is undisputed that Mello's memorandum is consistent with the "plain

meaning and stated purpose" of the Ordinance. (Apx. 105-06); *VIP of Berlin, LLC*, 593 F.3d at 189, 191. Therefore, the district court did not abuse its discretion in considering the Mello memorandum at summary judgment.

## II. Requiring significant owners of an adult business to be listed on the license posted inside the business does not violate the First Amendment.

### A. Standard of Review – *De Novo*

This Court reviews "*de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the non-movant, asking whether there is a genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law." *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 81 (2d Cir. 2013) (citing Fed. R. Civ. P. 56(a)). Similarly, this court reviews *de novo* a district court's conclusions of law, including those interpreting and determining the constitutionality of a law. *Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 189 (2d Cir. 2014).

### B. The district court erred in assuming that *owning* an adult business is expressive, First Amendment-protected speech and striking the business license posting requirement for failure to satisfy First Amendment standards.

The district court's holding that the 2007 Ordinance's license posting requirement "is unconstitutionally overbroad," (Apx. 138), is untenable because it wrongly assumes that the act of owning an adult-oriented business constitutes

protected First Amendment speech. It does not, and the district court's decision on the license posting issue should be reversed.

The first step in analyzing a free speech claim is determining whether the claim involves any speech implicating First Amendment protection. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985) ("[W]e must first decide whether solicitation in the context of the CFC is speech protected by the First Amendment, for, if it is not, we need go no further."); *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228-29 (2d Cir. 1996). The "party asserting that its conduct is expressive bears the burden of demonstrating that the First Amendment applies," and "that party must advance more than a mere 'plausible contention' that its conduct is expressive." *Church of American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 205 (2d Cir. 2004) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984)).

The Supreme Court and this Court have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Church of Am. Knights*, at 205 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). "In determining whether particular conduct is sufficiently expressive to implicate the First Amendment, therefore, the test is whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would

30

be understood by those who viewed it." *Id.* at 205 (internal citation and quotation marks omitted). Only "conduct that is *inherently expressive*" enjoys the protection of the First Amendment. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (emphasis added).

The district court *never identified* the First Amendment-protected speech or expression allegedly implicated by the business-license posting requirement. The district court erred in failing to address this threshold question, and this Court "need go no further." *Cornelius*, 473 U.S. at 797.

To be sure, the Supreme Court has recognized that *nude dancing* falls "within the outer ambit of the First Amendment's protection," *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000), but that is only because such dancing by individuals conveys an "erotic message." *Id.* at 291. But the marginal protection given to the expressive act of nude dancing does not render the conduct at issue in Plaintiffs' claim—mere *ownership* of an adult business—expression protected by the First Amendment. Indeed, there is no "plausible contention" or evidence in the record showing that purchasing an adult business is expressive, *Church of the American Knights*, 356 F.3d at 205, let alone that ownership is intended "to convey a particularized message." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). And even if an owner somehow sought to convey a message *qua* his ownership, there is no

likelihood "that the message would be understood by those who viewed [or knew of] it." *Id.*

Because owning an adult business is not "inherently expressive," *Rumsfeld,* 547 U.S. at 66, the district court erred in applying First Amendment scrutiny to the required posting of the adult business license.

In *Church of American Knights*, this Court reversed a judgment for the Ku Klux Klan invalidating New York's anti-mask law under the First Amendment. Although observing that "the regalia of the American Knights, including the robe, mask, and hood, are expressive," the Court concluded that "[t]he mask that members of the American Knights seek to wear in public demonstrations does not convey a message independently of the robe and hood." *Id.* at 206. "[W]e think the mask adds no expressive force to the message portrayed by the rest of the outfit . . . The American Knights offer no evidence or argument to the contrary." *Id.* at 207. Consequently, this Court held that "the First Amendment is not implicated," and a "balancing of interests under *United States v. O'Brien*, 391 U.S. 367, 377 (1968), is unnecessary." *Id*. at 208.

This is an *a fortiori* case. If the First Amendment is not implicated by a law requiring a person to *show his face during an expressive march in a public forum involving core political speech*, then it is not implicated when significant owners of strip clubs are required to post their business license, with their names listed, inside

their businesses. Thus, the district court's balancing of interests—requiring that the City show a substantial governmental interest to justify the [non-existent] burden on First Amendment speech—was unnecessary.

Instead of carefully analyzing whether the licensing posting requirement implicated a First Amendment right, the district court incorrectly assumed that the "right to anonymous speech grounded in the First Amendment" applied. (Apx. 138.) But *every* case the district court cited for that conclusion involved core political speech. (*Id.*) (citing *NAACP v. Alabama*, 357 U.S. 449 (1958) (involving required disclosure of a political group's (NAACP) membership list); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)  (distribution of anonymous political campaign literature); *Talley v. California*, 362 U.S. 60 (1960) (distribution of anonymous handbills urging boycott); *Bates v. City of Little Rock*, 361 U.S. 516 (refusal to provide NAACP membership list); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999) (requiring petition circulators to wear ID badges); *Buckley v. Valeo*, 424 U.S. 1 (1976) (involving political campaign contributions and expenditures); *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) (involving disclosure of persons who signed referendum to amend state constitution)).

None of these political speech cases apply here.

Again, *Church of American Knights* is instructive. After holding that New York's anti-mask law did not implicate the First Amendment, this Court distinguished many of the same anonymous, political speech cases cited by the district court in this case. 356 F.3d at 208-09 (distinguishing *NAACP v. Alabama*, *McIntyre*, *Talley*, *Bates*, *etc*.). This Court held that "[i]n contrast," to those cases, "the Supreme Court has never held that freedom of association or the right to engage in anonymous speech entails a right to conceal one's appearance in a public demonstration." *Id.* at 209. The court then "reject[ed] the view that the First Amendment is implicated every time a law makes someone—including a member of a politically unpopular group—less willing to exercise his or her free speech rights." *Id.* Because the First Amendment was not implicated, this Court refused to weigh the statute under the "exacting scrutiny" reserved for laws that burden core political speech. *Id.*

The district court erred by taking the opposite approach here, and applying the exacting scrutiny reserved for laws that burden core political speech to a business licensing requirement for strip clubs. (Apx. 139) (citing *John Doe No. 1*, 561 U.S. at 196, for the proposition that "the strength of the governmental interest" supporting the Ordinance "must reflect the seriousness of the actual burden on First Amendment rights").

In applying this standard without first explaining how owning an adult business is expressive conduct implicating First Amendment protection—much less how such conduct is analogous to "core political speech"—the district court put the cart before the constitutional horse and committed reversible error.

**C.  Even if owning an adult business were deemed First Amendment-protected expression, Keepers' challenge to the license posting requirement fails because the requirement is not unconstitutionally overbroad.**

Assuming, *arguendo*, that owning an adult business constitutes First Amendment-protected speech, the district court nevertheless erred in striking the license posting requirement as to significant owners because the requirement is not unconstitutionally overbroad on its face.

Facial claims are disfavored because they "rest on speculation," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008). "Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims." *Ward v. Utah*, 398 F.3d 1289, 1247 (10th Cir. 2005). "Invalidating any rule on the basis of its hypothetical application to situations not before the Court is 'strong medicine' to

be applied 'sparingly and only as a last resort.'" *FCC v. Pacifica Fdn.*, 438 U.S. 726, 743 (plurality) (internal citation omitted).

"The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep," in order for the statute to be deemed facially invalid under the First Amendment. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Moreover, the claimant must show substantial overbreadth from the "text of [the law] and from actual fact." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003). "[T]he mere fact that one can conceive some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "[t]here must be a *realistic* danger that the statute itself will *significantly* compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801 (emphasis added). Finally, "it has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld.'" *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (citations omitted).

The district court erred because it failed to apply *any* of the foregoing overbreadth standards when striking the license posting requirement. First, the

district court did not identify the impermissible applications of the Ordinance that would allegedly chill speech, let alone those applications would be substantial "in relation to the [Ordinance's] plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. Nor did the court below attempt to show substantial overbreadth from the text of the Ordinance, and "from actual fact." *Hicks*, 513 U.S. at 622.

Had the district court applied the standards for facial overbreadth claims, it would have upheld the regulation at issue. The only "actual facts" in this record belie any alleged need for owner anonymity posited by Keepers. Keepers' complaint—a public record—discloses that: "The sole shareholder of Keepers, Inc. . . . is Joseph Regensburger." (Apx. 5, ¶12.) Regensburger has owned multiple adult businesses, and has been the publicly named plaintiff in cases challenging adult business regulations. *See*, *e.g.*, *Regensberger v. City of Waterbury*, No. 3:04-CV-1900, 2008 WL 3992650 (D. Conn. Aug. 25, 2008).

As the district court's publicly-available opinion explains, Mr. Regensburger lost his ability to hold a liquor license in Connecticut as a result of prostitution charges at another of his adult entertainment businesses. (Apx. 54.) He later sold his entire interest in the business to his bartender, Angela Silano. (*Id.*) But Keepers never argues, let alone produces any evidence showing, that its owners or adult business owners in general engage in any actual expression, let alone that the *act* of owning the business is expressive. Nor does Keepers show that requiring business

37

licenses to be posted *inside* adult businesses would chill any expression. Those who would see the posted license, excluding government inspectors or emergency personnel, consist entirely of adult business patrons who presumably favor adult expression. This is plainly not a case involving "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council*, 466 U.S. at 800.

The anonymous political speech case law cited by the district court undermines its decision on this issue. For example, in *John Doe No. 1 v. Reed*, the Supreme Court *rejected* a facial First Amendment challenge to the required disclosure of persons signing a political referendum seeking to amend their state constitution to prohibit same-sex marriage. 561 U.S. 186 (2010). Although "two groups proposed to place on the Internet the names and addresses of all those who signed [the referendum] . . . [and] [t]he potential that such information could be used for harassment is vast," *id*. at 208 (Alito, J., concurring), the signers' facial challenge was rejected. *Id*. at 201-02; *see also ProtectMarriage.com-Yes on 8 v. Bowen*, 752 F. 3d 827, 833 (9th Cir. 2014) (upholding disclosure requirement relating to ballot initiative despite evidence of harassment and verbal attacks).

Here, the district court identified no risk of threats, reprisals, or harassment stemming from the license posting requirement. This lack of an actual burden on

38

First Amendment rights is dispositive, and the authorities cited by the district court show that its facial invalidation of the Ordinance provision at issue was erroneous.

Even if the district court had shown an actual burden on First Amendment expression, its discussion concerning the license posting requirement shows the validity of that requirement. (*See* Apx. 151.) The district court correctly held that requiring the names of those who control and operate adult businesses to appear on a business license inside the business does not offend the First Amendment because the requirement is substantially related to the City's interest in enforcing the Ordinance. (Apx. 141, 143.) This analysis highlights the "plainly legitimate sweep" of the business license posting requirement. But the district court erred in striking the requirement as applied to significant owners of adult enterprises.

Section 2.3-4(d) of the Ordinance requires that "each person with an influential interest in a sexually oriented business or in a legal entity that controls the sexually oriented business" to appear on the business license. The ordinance defines "influential interest" as:

> (1) The actual power to operate the sexually oriented business or control the operation, management or policies of the sexually oriented business or legal entity which operate the sexually oriented business, (2) ownership of a financial interest of thirty percent (30%) or more of a business or of any class of voting securities of a business, or (3) holding an office (e.g., president, vice president, secretary, treasurer, managing member, managing director, etc.) in a legal entity which operates the sexually oriented business.

(Apx. 33.)

39

Parts (2) and (3) of this definition specify ways that the City can identify people who fall under part (1). It is reasonable to conclude that the substantial owners that part (2) requires to be identified have the "actual power" to influence or "control the operation, management or policies" of the adult business.

Nor is there any constitutional principle prohibiting the City from requiring significant owners to be on the license posted within the business. Without a requirement that the names of significant owners appear on the business license, owners of adult businesses would be free to hide behind faux licensees and deny having the "actual power to operate . . . or control" the business. The City would be left in the precarious position of having to trust that only those who self-disclose have the actual power to control the business. This would allow the true business owners to go undetected and could significantly hamper the City's ability to regulate such businesses. *See, e.g., Envy, Ltd. v. City of Louisville*, 734 F. Supp. 785, 790 (W.D. Ky. 1990) (discussing expert findings of "extensive involvement of organized crime in adult entertainment activities," and holding that same "necessitates disclosure of true owners of these establishments to aid in enforcement of criminal laws, public and safety regulations, and income tax laws"). Thus, the Ordinance provides a valid mechanism for verifying that the names of *all* individuals with "actual power" can be readily identified.

In any event, the district court's reconsideration order shows that the license posting requirement, as applied to significant owners is not substantially overbroad. It found that "*many, if not most*, significant shareholders or other owners of an entity will fall within clause (1) [*i.e.*, because those significant owners have "[t]he actual power to *operate* the sexually oriented business or *control* the operation" of it § 2.3-2 (emphasis added)]." (*Id*. at 151) (emphasis added.) But the fact that "many, if not most" significant owners have the "actual power to operate . . . or control" adult businesses proves that the required disclosure of significant owners serves the Ordinance's constitutionally-permissible purpose of identifying and verifying true owners. Thus, the plainly legitimate sweep of the regulation dwarfs any of its (unidentified) impermissible applications.

For the foregoing reasons, even if ownership of an adult business can be deemed speech or expression protected by the First Amendment, the public posting requirement "has a plainly legitimate sweep" and the district court erred in facially invalidating the Ordinance on overbreadth grounds.

**D.      Numerous cases confirm that the license posting requirement is serves an important governmental interest.**

The vast majority of adult business disclosure cases commit the district court's error of wrongly assuming, without explanation, that owning an adult business constitutes speech. But even these cases do not support the court's

decision to invalidate the licensing posting regulation. The district court's conclusion that the business license requirement is not substantially related to an important governmental interest overlooks the clear distinction between disclosures of *all* or *de minimis* stockholders and disclosures of *significant* owners.

A disclosure requirement—even one that chills speech—is constitutional when there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 371 (2010) (internal quotations omitted). The government clearly has an "important interest" in enforcing regulations that "combat the harmful secondary effects [*e.g.*, prostitution, rape, assaults, robbery, thefts, reduced property values, neighborhood blight, *etc.*] associated with [adult] establishments." *City of Erie*, 529 U.S. at 296-97. *See also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50-51 (1986); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 430, 436 (2002).

By allowing the government to readily identify the persons who control and operate adult businesses, the required disclosure of significant shareholders "aid[s] in the enforcement of criminal laws, [and] public and safety regulations." *Richland Bookmart, Inc. v. Knox Cnty.,* 529 F. Supp. 2d 868, 879 (E.D. Tenn. 2007) (internal quotation omitted) (upholding disclosure of 30% owners) *aff'd in part*, *rev'd in part sub nom. Richland Bookmart, Inc. v. Knox Cnty., Tenn.,* 555 F.3d 512 (6th Cir.

2009). Because they are directly related to combating secondary effects, such disclosure requirements are constitutional. *Id.*; *see also Tee & Bee, Inc. v. City of West Allis*, 936 F. Supp. 1479, 1489 (E.D. Wis. 1996) (upholding disclosure of 10% owners); *Dumas v. City of Dallas*, 648 F. Supp. 1061, 1076-77 (N.D. Tex. 1986); *Blue Movies, Inc. v. Louisville/Jefferson County Metro Government*, 317 S.W. 3d 23, 38 (Ky. 2010) (upholding disclosure of 20% owners).

In contrast, because the required disclosure of all shareholders or those with only *de minimis* ownership interests (*e.g.*, 5%) capture individuals "who have no responsibility for the everyday operation of a[n adult] business," such requirements are "impermissibly broad" and not related to reducing negative secondary effects. *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 225 (6th Cir. 1995); *see also Acorn Investments, Inc. v. City of Seattle*, 887 F. 2d 219, 225 (9th Cir. 1989) (invalidating disclosure of *all* shareholders).

The district court quoted the Sixth Circuit's decision in *East Brooks Books*, but failed to recognize the distinction contained in the quoted passage, namely that that the city has legitimate interest in identifying those "who have a controlling or significant share in such business," even though "[t]he requirement that *every* person with *any* ownership interest, regardless of how small, sign the application . . . is impermissibly broad." 48 F.3d at 225. The reason for the distinction in the case law is simple: while a *de minimis* owner can rarely influence

43

and control the operation of a sexually oriented business, a significant owner often can. *See Richland Bookmart*, 529 F. Supp. 2d at 879 (citing *East Brooks Books* and upholding the required disclosure of individuals with at least a 30% ownership share in an adult business).

Nevertheless, the district court perplexingly "concludes that the scope of the posting provision is unconstitutionally broad because there is not a substantial relationship between the governmental interest and the information required to be posted." (*Id*. at 143.) The district court noted that:

> While requiring the posting of the names of the individuals who manage, *operate* and/or *control* a sexually oriented business is substantially related to the enforcement of the ordinance, posting the names of individuals based merely on their status as a 30% shareholder or an officer not involved in the management, operation or control of the sexually oriented business is not substantially related to the City's interest in enforcing the ordinance."

(*Id.*) (emphasis added.)

This holding assumes that significant shareholders are not involved in the operation of the business, but the City, in conformity with all of the disclosure cases cited above, reasonably concludes that significant shareholders are involved. As discussed above, by requiring the names of significant owners to appear on adult business licenses, the Ordinance serves the legitimate function of ensuring that all individuals with "actual power" to "control and operate" such businesses are readily identifiable.

Because the license posting requirement does not implicate the First Amendment, this Court should reverse the district court's grant of partial summary judgment to Plaintiffs. Even if the First Amendment applies, the district court erred in striking the licensing posting requirement on facial overbreadth grounds.

## Conclusion

For the foregoing reasons, this Court should affirm the district court's decision to consider Mello's memorandum, and should reverse the district court's invalidation of the 2007 Ordinance's license posting requirement.

Respectfully submitted,

s/ Scott D. Bergthold
Scott D. Bergthold
LAW OFFICE OF
SCOTT D. BERGTHOLD, PLLC
7446 Shallowford Rd., Ste. 202
Chattanooga, TN 37421
(423) 899-3025 (office)
(423) 899-3029 (fax)
sbergthold@sdblawfirm.com

James N. Tallberg
Karsten & Tallberg LLC
8 Lowell Rd.
West Hartford, CT 06119
Tel: (860) 233-5660
Fax: (860) 233-5800
E-mail: jtallberg@kt-lawfirm.com

*Attorneys for Appellee - Cross-Appellant
City of Milford*

45

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because it contains 10, 235 words according to the word count feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.


Dated: <u>November 13, 2014</u>        <u>s/ Scott D. Bergthold           </u>
                                           Scott D. Bergthold
                                           Attorney for Defendant-Appellee-Cross-
                                           Appellant City of Milford